Carüthers, J.,
delivered the opinion of the court.
In this action of ejectment the Court charged the jury that the plaintiff below had exhibited a good title, and they found accordingly. His title Was made out by an entry in the office of the entry taker of Dyer county, on the 1st of September, 1851; plat and certificate of survey, 1st December, 1851, and grant dated 1st February, 1852, for the two hundred and fifty acres of land for which this suit was instituted.
The opposing title of defendant was an entry of the’ same land made on the 15th November, 1834, on mili *602 tary warrant, No. -, plat and certificate of survey made 1st of April, 1852, and grant issued 3rd December, 1852.
The only question presented, is, whether there is error in the charge, or, is the legal title in the plaintiff or defendant, under the foregoing facts. Upon this question alone, it is agreed in the bill of exceptions and the argument here, the case must turn. It is said to be a question of much importance, as the title to many tracts of land in this section of the State-, depends upon it, and much hardship will result from a decision either way. "We cannot look to consequences, but must declare the law.
The system of land law applicable to that portion of Tennessee lying south and west of the Congressional reservation line, so far as relates to the procurement of title, is to be found in the act of 1819, ch. 1; 2 Hay. & Cobb, 85, and the acts subsequent thereto, on the same subject, down to the present time. These lands were reserved from appropriation until 1819, when they were, by the act of that year, exposed to the satisfaction of North Carolina land claims, on the plan and upon the terms therein provided. All title to land in the reservation must be tested by the series of acts referred to, commencing with that of 1819.
There is no question but the entry of the plaintiff is lawful and regular, and his survey and grant in the time prescribed by the law. His is, therefore, a good and valid title, unless that of the defendant is paramount to it. Whether this be so we will now proceed to examine. His entry was made, as has been stated, on the 15th November, 1834, in the proper office, and *603 in due form. It was, undoubtedly, the incipiency of a good title to the land. By the act of 1822, ch. 35, § 9, Hay. & Cobb, 104, all entries thereafter made were required to be surveyed in one year, and the plat and certificate, after being recorded, to be returned to the register’s office in six months from the date of the survey, and the grant to be issued in one year thereafter. The 10th section is, that, “In, all cases of failure to comply with the provisions of this act in performing any of the duties therein severally limited, the entry shall be voidable, and liable to appropriation as other vacant lands in this State, unless the issuance of a grant be prevented by the pendency of a ocvoeat, or other legal prohibition.”
From *the time of the passage of this act, (1823,) acts were passed at each successive session of the legislature opening the land offices for the reception of entries, and prescribing a time at which they should be again closed, and extending also the time allowed for making surveys, and obtaining grants on entries already made. In 1835 the surveyor’s offices were abolished, and entry takers and surveyors for each county, provided for, upon the plan long before adopted for that part of the State north and east of the reservation line. By that act, ch. 48, § 1, the surveyors are required, under heavy penalties, to finish and close the business of- their respective offices, by the 1st of September, 1836. In these county offices, all vacant land might be entered upon the terms prescribed by law. Tinder this law the entry of the plaintiff was made and surveyed, and granted in proper time.
*604 But the defendant’s entry was made in 1834, and the acts extending the time to have it surveyed and granted, continued to he passed from that time by each succeeding legislature. At the next session after it was made, the time was extended for two years, ch. 37, § 1. “The act of 1848, ch. 92, allowed until 1st September, 1849; and by act of 1850, ch. 138, further time is given until the 1st day of September, 1851, for making surveys and obtaining grants on all entries heretofore made in any of the land offices in this State.” It will be seen that on the day this extended time elapsed, the plaintiff made his entry. On the 13th of November, 1851, the time was again extended by the legislature to the 1st of March, 1854, ch. 326. Here, then, was a period of two months and thirteen days, when this land was, in the language of the act of 1823, ch. 35, § 10, “liable to appropriation as other vacant lands in this State.” This provision of the act of 1823, has never been altered by any of the extension acts. Then, in order to preserve the advantages of priority of entry, the same must have been made, and the grant obtained in the specified time prescribed in the act of 1823, or within some period of extension. These are conditions imposed by the State, and must be complied with by all who set up claim to her lands. In case of failure to conform to these conditions, the entry is voidable, his claim forfeited, and the land subject to a younger enterer. The legislature cannot, by a subsequent extension of the time for the performance of the conditions, affect the title that has vested in the younger enterer. This, that body would have had a right to *605 do, notwithstanding the time for the performance of the annexed condition bad expired, in virtue of its sovereign control over all the vacant lands in the State, if no other individual right had intervened; but that having occurred by the entry of the plaintiff, such vested right is protected by the constitution, and beyond the power of the legislature.
The argument of defendant’s counsel, that by the entry a right was obtained that could not be defeated, is unsound. The same law under which the entry was made, affixed conditions necessary to be performed for the maturity of the title, and on the failure of which it would be forfeited/ There is, then, no ground of complaint, or any hardship in the result, because the prerequisites -to malee a good title were plainly declared in the same law under which the entry was made. Prom 1834 to 1852, the entry of defendant was permitted to slumber, and the repeated legislative invitations to perform the indispensable conditions, were entirely neglected, until the State, in 1851, re-sold the land to a ■more vigilant purchaser.
The principle of this case is not new, but was decided in the case of Vaugh & Brown vs. Hatfield, 5 Yer., 236; and more recently in the case of Williamson and wife vs. Troope & Laura, 11 Humph., 265. It is true that the act of 1839, under which this last cause fell, related to entries north and east of the reservation line, and expressly declared them void as to subsequent entries, if not surveyed and granted in the designated time. But that is no stronger than the act of 1823, by which this case is governed, which provides that in the same event the older entry shall be voidable, and the *606 land subject to appropriation, “as other vaecmt Imids.” We are, therefore, of opinion that tbe plaintiff exhibited a perfect title to this land, and that the recovery was proper.
Affirm the judgment. •